IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID DAVIS | § | |
| v. | § | CIVIL ACTION NO. 6:05cv242 |
| CAPTAIN THERESA DeFOOR | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff David Davis, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action under 42 U.S.C. §1983 complaining of alleged violations of his civil rights during his confinement in the prison. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

An evidentiary hearing was conducted on September 20, 2005, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Davis testified concerning his claim that he was not receiving his medically ordered diet. The parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding; the lawsuit was subsequently transferred to the docket of the undersigned United States Magistrate Judge for entry of final judgment in accordance with the consent of the parties. 28 U.S.C. §636(c).

Following the hearing, the Defendant Captain DeFoor, a food service supervisor, was ordered to answer the complaint. After the answer was filed, the lawsuit was scheduled for a trial before the Court. The parties were notified that they could call and cross-examine witnesses and introduce documentary and other evidence in support of their respective contentions. The trial before the Court was conducted without objection on April 12, 2006.

At trial, Davis testified that in October of 2004, he was diagnosed with hypoglycemia and prescribed a hypercaloric diet. He said that he suffered from such symptoms as nausea, shaking, and weakness if his blood sugar fell too low. Davis said that he saw Dr. Kuykendall, who prescribed him the diet for a 12-month period.

Davis stated that it took a while for the diet order to be processed. He said that Nurse Morton notified the food service department several times that he, Davis, needed the special diet, but that he had trouble getting it. Instead, Davis said, the food service department kept telling him that he was not on the special diet list, or that he was supposed to get a snack only once per day, rather than three times a day. Davis said that he normally received his snack with the evening meal, but not always with breakfast or lunch; some officers gave it to him and others did not.

As a result of not receiving the snacks, Davis said, he suffered from low blood sugar symptoms, including the nausea, shaking, and weakness. Because he was in administrative segregation, he could not go to the infirmary when he wanted, but had to get an officer to take him. Davis said that sometimes the officers would call the infirmary and get an order for a snack for him, but that this did not always happen and could take up to a few hours to get the snack.

Davis said that the officers told him that he had to write to Captain DeFoor, who was in charge of food services. He did so, but without success. He said that he filed grievances because his letters were not answered. Davis said that the grievance responses told him that he was on the list to get the hypercaloric diet, but he still did not get the snacks except with the evening meal. A week after the Spears hearing, Davis said, he was taken off the diet list entirely; Davis also said that after the Spears hearing, the medical records regarding his hypoglycemia "simply disappeared."

During cross-examination, the Attorney General argued that there was no evidence to show that Davis had ever been diagnosed with hypoglycemia or been ordered a special diet. Dr. Kuykendall testified that he did not recall having a conversation with Davis about hypoglycemia, and that he could not find any evidence of hypoglycemia in his review of the records immediately prior to trial.

However, Davis pointed out that he had copies of medical records, from October of 2004, showing exactly that. Copies of these records were provided to the doctor, who stated that these records showed that on October 14, 2004, Davis was seen in the clinic with a blood sugar level of 37, well below normal, which Dr. Kuykendall said was consistent with hypoglycemia.

Copies of medical records from the <u>Spears</u> hearing were also provided to Dr. Kuykendall, who said that these records showed that on October 24, 2004, he had ordered that Davis receive a hypercaloric diet for 12 months. Dr. Kuykendall noted that these documents were not included in the trial records which he reviewed.

Dr. Kuykendall explained that hypoglycemia means low blood sugar, and occurs when the body produces too much insulin. He said that the usual treatment is to eat a number of smaller meals throughout the day. He stated that a hypercaloric diet involves giving snacks, such as peanut butter sandwiches, along with each of the three daily meals. The doctor said that these diet were ordered by the medical staff "pretty liberally."

Michael Cook, a food service worker, testified that if an inmate in administrative segregation was on a special diet, the inmate's name would appear on a diet list which the food service department received from the medical department. He said that he did not recall talking to Davis or telling Davis that he would get a snack only with the evening meal. He said that he worked on the evening shift, which was the shift on which Davis did get his snack. Cook explained that the list he received was only for the evening meal, and that he could not tell what an inmate would receive at any other meal by looking at his list. Cook had a sample sheet of inmates on special diets; some of the entries on this sheet indicated a hypercaloric diet. with three snacks, and others simply indicated a hypercaloric diet, despite the fact that according to Dr. Kuykendall, all hypercaloric diets include three snacks.

Dr. Kuykendall was recalled to the stand and provided with additional records from the <u>Spears</u> hearing. He said that the blood sugar reading of 37 was taken from a particular type of test, and tends to show "functional hypoglycemia." He reiterated that the hypercaloric diet always

involves three snacks. In this case, Dr. Kuykendall said, a hypercaloric diet was ordered, but that he apparently neglected to log it in, so it did not show up as a continuing medical need in the remainder of the medical records.

## Legal Standards and Analysis

In a civil action, the plaintiff has the burden of proof to establish issues of fact by a preponderance of the evidence. Vogel v. American Warranty Home Service Corp., 695 F.2d 877, 882 (5th Cir. 1983). A "preponderance of the evidence" means the greater weight of the evidence; it is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his burden of proof. Smith v. United States, 726 F.2d 428, 430 (8th Cir. 1984).

In this case, the basis of Davis' claim is that the Defendant, Captain DeFoor, was deliberately indifferent to his health or safety, with respect to his diet. The courts have stated that prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence

alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. at 837-38; *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, the facts presented at trial do not show that Captain DeFoor was deliberately indifferent to Davis' medical needs. The testimony and records show that there was a failure of communication between the medical department and the food service department, and there are some indications that some food service employees may have had an incomplete understanding of what was required. However, there was no evidence that any of this occurred as the result of deliberate indifference to Davis' needs, as opposed to mere negligence, carelessness, or bureaucratic bungling, none of which set out a constitutionally cognizable claim under Section 1983. The only link which Davis provided to Captain DeFoor, the sole named Defendant in the case, was that he had written to DeFoor, but had received no answer, which is not sufficient to show that she was deliberately indifferent to his needs. *See* Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (no protected liberty interest in having grievances resolved to an inmate's satisfaction).

Nor does the fact that Captain DeFoor was a supervisor over the food service department give rise to Section 1983 liability. The Fifth Circuit has stated that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a

repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Davis has not shown that Captain DeFoor was personally involved in a constitutional deprivation, that wrongful conduct by her was causally connected to a constitutional deprivation, or that she had the authority to and did implement a constitutionally deficient policy which was the moving force behind such a deprivation. As noted above, the mere fact that she did not respond to his letters does not show a constitutional deprivation. Instead, the evidence shows at most that the food service department officers may have been negligent or careless. This does not set out a constitutional violation, and so Davis' lawsuit must be dismissed.

## Qualified Immunity

The Fifth Circuit has held that to prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. To determine whether relief is appropriate, the court must undertake a two-step analysis.

First, the Court must evaluate whether a "plaintiff's allegations, if true, establish a constitutional violation." Second, if a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003), *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

In Hope, the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ....but it is to say that in the light of pre-existing law. the unlawfulness must be apparent."

Hope, 536 U.S. at 739, 122 S.CT. at 2515, *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In this case, the plaintiff David Davis has failed to show the deprivation of a constitutional right, in that he has not shown that he was the victim of deliberate indifference to his needs, nor that any actions by Captain DeFoor violated any clearly established constitutional or statutory rights of which a reasonable person would have known.  or that any of the defendants acted in an unreasonable manner.  Consequently, he has failed to overcome the qualified immunity defense.  *See* Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (noting that when qualified immunity is invoked, the officer need only plead her good faith to shift the burden of proof to the plaintiff, who must then rebut the defense by establishing that the officer's conduct violated clearly established law).

The Fifth Circuit has held that it is proper to submit the question of qualified immunity to the finder of fact.  *See* Snyder v. Trepagnier, 142 F.3d 791, 800 (5th Cir. 1998); Flores v. City of Palacios, 381 F.3d 391, 402 (5th Cir. 2004).  The Court finds as a fact that Officer DeFoor is entitled to the defense of qualified immunity.  Because Davis has failed to overcome the qualified immunity defense, his lawsuit is amenable to dismissal on this basis as well.  It is accordingly

ORDERED that judgment be and hereby is entered, that the Plaintiff David Davis shall take nothing on his lawsuit from the Defendant Theresa DeFoor.  Rules 52(a) and 58, Fed. R. Civ. P.  It is further

ORDERED that the above-styled civil rights lawsuit is hereby DISMISSED with prejudice.  Finally, it is

ORDERED that all motions filed by any party which may be pending in this action are hereby DENIED.  All parties shall bear their own costs.

So **ORDERED** and **SIGNED** this **17** day of **April, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE